**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CARING PAIN MANAGEMENT PC a/k/a CAREON PAIN MANAGEMENT, JINGHUI XIE, M.D., FIRST CARE CHIROPRACTIC CENTER, L.L.C., and KONSTANTINE FOTIOU, D.C., <br><br> Defendants. | Case No. 2:22-cv-05017(BRM)(JSA) <br><br> **OPINION** |

Before this Court is Defendants Caring Pain Management PC, a/k/a Careon Pain Management and Jinghui Xie, M.D.'s ("Caring Pain Defendants") Motion to Dismiss and Motion to Compel Arbitration pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 16.) Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co., ("Plaintiffs" or "GEICO") filed an opposition to Defendants' motion (ECF No. 17), Defendants filed a reply (ECF No. 20), and Plaintiffs filed a sur-reply (ECF No. 24). Having reviewed the parties' submissions filed in connection with Defendants' Motion, and for good causing having been shown, Defendants' Motion (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**

This case is about the relationship between New Jersey healthcare providers and the insurance companies that pay those providers for treating patients for injuries arising from automobile accidents. Plaintiffs allege a series of fraudulent schemes, including unlawful compensation in exchange for patient referrals, misrepresentation of the nature, extent, and results of patient examinations, and false representation regarding compliance with pertinent healthcare laws. (*See* ECF No. 17 at 1–5.) Defendants claim this case is about Plaintiffs' attempts to accumulate settlement payments through specific litigation that accuses healthcare professionals of fraud. (*See, e.g.*, ECF No. 16-1 at 1.)

On August 11, 2022, Plaintiffs filed a Complaint against the Caring Pain Defendants, First Care Chiropractic Center, L.L.C., and Konstantine Fotiou, D.C. (ECF No. 1 at 1.) On October 21, 2022, Plaintiffs amended their Complaint. (ECF No. 12.) On October 28, 2022, the Caring Pain Defendants filed with this Court a Motion to Dismiss and Motion to Compel Arbitration. (ECF No. 16.) On November 7, 2022, Plaintiffs filed an opposition to the Caring Pain Defendants' motion. (ECF No. 17.) On November 14, 2022, Caring Pain Defendants filed a reply. (ECF No. 20.) On November 18, 2022, Plaintiffs, with leave from this Court, filed a sur-reply. (ECF Nos. 21, 22, 24.)

**II.   LEGAL STANDARD**

    **A. Motion to Dismiss**

Defendants move to dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (ECF No. 16 at 3.) "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first, because if it must dismiss the complaint for lack of

subject matter jurisdiction, all other defenses and objections become moot." *Elkholy*, 2022 WL 2373917 at *3 (citing *Dickerson v. Bank of Am., N.A.*, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013)).

### 1. Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-03922, 2013 U.S. Dist. LEXIS 37639, at *2, 2013 WL 1163483 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994)). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (alteration in original) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings'" and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (alterations in original) (quoting *Mortensen v. First*

*Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Mortensen*, 549 F.2d at 891).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Id.* at 348–49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (quoting *Mortensen*, 549 F.2d at 892 (holding dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

### 2. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). However, "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S. Ct. 2932. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678, 129 S. Ct. 1937. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670, 129 S. Ct. 1937.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting Shaw, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B. Motion to Compel Arbitration

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No. 10-2287, 2010

WL 3076861, at * 3 (D.N.J. Aug.4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). In doing so, the Court "must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review." *Elkholy*, 2022 WL 2373917 at *4 (citing *Sanford v. Bracewell & Guiliani,* 618 F. App'x 114, 117 (3d Cir. 2015)). When face of the complaint and documents relied thereon clearly demonstrate that the parties agreed to an enforceable arbitration clause, the Court will apply a "Rule 12(b)(6) standard without discovery's delay." *Id.* (quoting *Gaidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013)). The 12(b)(6) standard should not be employed where the complaint is insufficiently clear to establish an enforceable agreement to arbitrate or where the opposing party has "come forth with reliable evidence . . . that it did not intend to be bound by the arbitration agreement." *Id.* (quoting *Gaidotti*, 716 F.3d at 774).

Congress enacted the Federal Arbitration Act ("FAA") to establish a strong federal policy in support of private arbitration agreements. *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 396 (3d Cir. 2020); *see also Elkholy*, 2022 WL 2373917, at *4 (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Pursuant to the FAA, written arbitration agreements entered into in connection with "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Elkholy*, 2022 WL 2373917 at *4. Parties may request an order from the court "directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Accordingly, the FAA grants courts the power to compel arbitration and to stay or dismiss claims subject to a valid arbitration agreement," and "mandates that district courts shall direct the parties

to proceed to arbitration on issues . . . to which an arbitration agreement" applies. *See Elkholy*, 2022 WL 2373917 at *4 (citing 9 U.S.C. § 3) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

### III. DECISION[1]

Defendants raise two arguments in support of dismissal of the Complaint: (1) that payment of personal injury protection ("PIP") benefits are subject to statutory arbitration under New Jersey's No-Fault Law; and (2) that GEICO's Decision Point Review Plan ("DPRP") contractually requires Plaintiffs to arbitrate. (ECF No. 16-1 at 12, 27.) This Court begins with an overview of the applicable statutes.

#### A. New Jersey's No-Fault Law and Insurance Fraud Prevention Act

##### 1. New Jersey's Automobile Reparation Reform Act (the "No-Fault Law")

The No-Fault Law requires that "[e]very automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage." L. 1972, c. 203, § 3, at p. 782 (codified at N.J. Stat. Ann. § 39:6A-4). The law arose from recommendations put forth by the Automobile Insurance Study Commission (the "Commission") in an attempt to end New Jersey's fault-based tort system for automobile accidents. *See Elkholy*, 2022 WL 2373917 at *1 (citing *Gambino v. Royal Globe Ins. Cos.*, 429 A.2d 1039, 1041–42 (N.J. 1981)). The Commission aimed to solve four primary objectives: (1) "prompt and efficient provision of benefits for all accident injury victims"; (2) "reduction or stabilization of the prices charged for automobile insurance"; (3)

---

[1] On the whole, the Court agrees with and relies on the Honorable Michael A. Shipp, U.S.D.J.'s previous opinion in *Gov't Employees Ins. Co. v. Elkholy*, 2022 WL 2373917 (D.N.J. June 30, 2022).

"ready availability of insurance coverage necessary to the provision of accident benefits"; and (4) "streamlining of the judicial procedures involved in third-party claims." *Id.*

A primary objective of the No-Fault Law was to "minimize the workload placed upon the courts by enabling losses to pass into claims . . . with a minimum of judicial intermediation." *Elkholy*, 2022 WL 2373917 at *2 (citing *Gambino*, 429 A.2d at 1042). As stated by the New Jersey Supreme Court, the New Jersey Legislature was aware of the delays in compensation that resulted from courts frequently adjudicating fault. *Id.*; *see also Roig v. Kelsey*, 641 A.2d 248, 249 (N.J. 1994) ("[A]nother major benefit of the proposed system would be a reduction of the present court backlog.") As such, in interpreting that "statute to give full effect to the legislative intent," the "statutory language must be read, whenever possible, to promote prompt payment to all injured persons for all of their losses." *Gambino*, 429 A.2d at 1043. Approaches "which minimize resort to the judicial process, or at least do not increase reliance upon the judiciary, are strongly to be favored." *Id.* (citing *Amiano v. Ohio Casualty Ins. Co.*, 424 A.2d 1179, 1181 (N.J. 1981)). To accomplish this objective and assist in lowering the burden on courts, the No-Fault Law provides that "[a]ny dispute regarding the recovery of . . . benefits provided under personal injury protection coverage . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute." N.J. Stat. Ann. § 39:6A-5.1(a).

### 2. New Jersey's Insurance Fraud Prevention Act

The Insurance Fraud Prevention Act ("IFPA"), which was enacted roughly a decade after the No-Fault Law, provides that an "insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction." N.J. Stat. Ann. § 17:33A–7(a). In part, the New Jersey Legislature enacted the IFPA to address rising insurance

rates resulting from widespread fraud, *see* 25 N.J. Prac., Motor Vehicle Law and Practice § 11:29 (5th ed.), with the clear objective to "confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud [and] eliminating the occurrence of such fraud through the development of fraud prevention programs." *Merin v. Maglaki*, 599 A.2d 1256, 1259 (1992) (quoting N.J. Stat. Ann. § 17:33A-2).

"[A] person or practitioner violates the IFPA by presenting or preparing false or misleading statements in connection with an insurance claim, or by failing to disclose the occurrence of an event that affects an individual's entitlement to insurance benefits or the amount of benefits." *Elkholy*, 2022 WL 2373917 at *2 (citing N.J. Stat. Ann. § 17:33A-4). "An insured who prevails on an IFPA claim may seek recovery of attorney's fees and can seek treble damages." *Id.* (citing N.J. Stat. Ann. § 17:33A-7a, 7b).

### B. Arbitrability

Defendants argue Plaintiffs' claims fall within the purview of the No-Fault Law's arbitration provision. In other words, Defendants allege the "No-Fault Law expressly requires any dispute related to the recovery of PIP benefits be submitted to arbitration." (ECF No. 16 at 12.) The arbitration provision itself states that "dispute[s] regarding the recovery of [PIP] benefits . . . arising out of the operation, ownership, maintenance, or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute." N.J. Stat. Ann. § 39:6A-5.1(a). Defendants contend Plaintiffs' claims equate to "disputes regarding [the] recovery of PIP benefits" and "belong in . . . arbitration." (ECF No. 16-1 at 14.) Alternatively, Defendants claim that Plaintiffs' DPRP compels arbitration for all claims in the Complaint. (*Id.* at 27.)

In response, Plaintiffs contend that the "overwhelming weight of authority . . . holds that the arbitration provision" in New Jersey's No-Fault Law does "not require a plaintiff-insurer to

arbitrate IFPA, fraud, unjust enrichment, RICO, or other fraud-based claims to recover compensatory damages," and that *Elkholy*, a decision this Court finds persuasive and well-reasoned, is a "single outlying decision." (ECF No. 17 at 8, 10.) With respect to their IFPA claim, Plaintiffs contend the statutory language alongside "every court to have considered the issue" compels this Court to find immunity from arbitration. (ECF No. 17 at 19.)

This Court is left with two different statutory constructs: New Jersey's No-Fault Law and New Jersey's Insurance Fraud Prevent Act. But, as in *Elkholy*, "the question before the Court is not whether all or none of [Plaintiffs'] claims are arbitrable—instead, examination of each individual claim is demanded." *Elkholy*, 2022 WL 2373917 at *5. The Court addresses each in turn.

### 1. The Common Law Fraud, Unjust Enrichment, and RICO Claims

Defendants raise two theories as to why these non-IFPA claims demand arbitration: (1) the No-Fault Law encompasses these claims, and (2) Plaintiffs' DPRP necessitates arbitration. *See* (ECF No. 16-1 at 12, 27.) Much like the court in *Elkholy*, this Court finds the No-Fault Law's language, legislative intent and application cover Plaintiffs' claims for common law fraud, unjust enrichment and RICO. As such, this Court need not dwell on Defendants' second argument and focuses its analysis on the statutory language of the No-Fault Law. *See, e.g.*, *United States v. Ron Pair Enterprises, Inc.*, 235, 241 (1989); *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000).

The plain language of the No-Fault statute provides that "[a]ny dispute regarding the recovery of . . . benefits provided under personal injury protection coverage . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute." N.J. Stat. Ann. § 39:6A-5.1(a). Here, "the term 'dispute' refers to legal disputes between parties" and therefore "'any dispute' . . . means all

'disputes' around the 'recovery' of PIP Benefits are controlled under this provision." *Elkholy*, 2022 WL 2373917 at *6 (citing N.J. Stat. Ann. § 39:6A-5.1(a); *State Farm Mut. Auto. Ins. Co. v. Molino*, 674 A.2d 189, 190 (N.J. Super. Ct. App. Div. 1996)). As to the term "recovery," "the policy behind the No-Fault Law suggests that 'recovery' means claims for PIP Benefits submitted by insured individuals or their medical providers to insurance companies." *Id.* Therefore, "[t]he language of the statute leads to one conclusion: the arbitration mandate covers a broad array of legal disputes." *Id.* (citing *Molino*, 674 A.2d at 190). "[A]ny party to the dispute" may invoke arbitration under the No-Fault Law. *See id.* (quoting N.J. Stat. Ann. § 39:6A-5.1(a)).

The underlying purpose of the No-Fault Law's arbitration provision is a "firm policy favoring prompt and efficient resolution of PIP disputes without resort to the judicial process." *Molino*, 674 A.2d at 191; *see also Roig v. Kelsey*, 641 A.2d 248, 256 (N.J. 1994) (explaining that one of "the overwhelming goals" of the No-Fault Law is reducing court congestion); *Gambino v. Royal Globe Ins. Cos.*, 429 A.2d 1039, 1043 (N.J. 1981) ("[A]pproaches which minimize resort to the judicial process, or at least do not increase reliance upon the judiciary, are strongly to be favored."); *State Farm Mut. Auto. Ins. Co. v. Crocker*, 672 A.2d 226, 230 (N.J. App. Div. 1996) (same). Accordingly, "the No-Fault Law encompasses a broad array of legal disputes regarding PIP benefits, including mistaken claims for benefits, fraud-based claims, or any other claim involving the 'recovery' of PIP Benefits." *Elkholy*, 2022 WL 2373917, at *6 (citing *Molino*, 674 A.2d at 190–91). Finding otherwise would undermine the purpose of the No-Fault Law. *See id.* ("[S]hould the parties' characterization of a PIP Benefits dispute be dispositive, a party wishing to sidestep mandatory arbitration could classify their claims in ways that fling open the courthouse doors. Such an end-run around the No-Fault Law's strong policy purpose favoring 'prompt and

efficient resolution of PIP disputes without resort to the judicial process' would be consequential, to say the least." (quoting *Molino*, 674 A.2d at 191)).

Like in *Elkholy,* Plaintiffs' claims involve "(1) a dispute by [Plaintiffs] (2) involving Defendants' recovery of PIP Benefits that (3) one party wishes to send to arbitration." *Elkholy*, 2022 WL 2373917, at *6. Consequently, Plaintiffs' common law fraud, unjust enrichment, and RICO claims fall within the statute's arbitration provision.

The Court is not persuaded by Plaintiffs' attempt to "dress their PIP Benefits dispute in a different color sounding in fraud." *Id.* Plaintiffs fail to support their argument that the No-Fault Law does not require a "plaintiff-insurer to arbitrate . . . fraud, unjust enrichment, RICO, or other fraud-based claims" (ECF No. 17 at 8), nor do they adequately demonstrate that fraud-based claims "warrant special treatment or should be carved out from mandatory arbitration." *See Elkholy*, 2022 WL 2373917, at *6 ; *see also United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000) (concluding that "[o]nce the plain meaning of the statute is determined, it is conclusive "except in rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

For example, *Gov't Emps. Ins. Co. v. Stelton Radiology Corp.,* cited by Plaintiffs in support, notes only that "RICO and other fraud claims 'go beyond' the type of PIP disputes for which arbitration is mandatory," without providing any additional clarification. 2022 WL 1486116, at *5 (D.N.J. May 11, 2022). *Gov't Emps. Ins. Co. v. Reg'l Orthopedic Pro. Ass'n*, to which the court *Stelton Radiology Corp.* cites in support, is devoid of reasoning for its own conclusion that plaintiffs "IFPA, RICO, and other fraud-based claims are not subject to arbitration" and "go beyond" such disputes, citing only to a pair of prior cases concerning the arbitrability of IFPA claims, not common law fraud, unjust enrichment or RICO claims under New Jersey's No-

Fault Law. 2017 WL 5986964, at *1 (D.N.J. Dec. 1, 2017) (citing to *Federal Insurance Co. v. Von Windherburg-Cordeiro*, 2012 WL 6761877 (D.N.J. 2012) (concluding that IFPA claims are not arbitrable); *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 928 A.2d 154, 157 (App. Div. 2007) ("Our conclusion that Nationwide is entitled to a judicial resolution of its claim that Fiouris' policy is void due to his alleged misrepresentation of his state of residence is reinforced in the present case by the fact that Nationwide asserts its claim under the Insurance Fraud Prevention Act. . . .")); *see also Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr. P.C.*, 2020 WL 881514, at *1 n.3 (D.N.J. Feb. 24, 2020) (citing case law discussing only IFPA claims yet concluding that "NJIFPA, RICO or common law fraud claims are not subject to mandatory arbitration under New Jersey's [N]o-[F]ault insurance statute"). Needless to say, this Court is unconvinced by Plaintiffs' argument as to the "overwhelming weight of [persuasive] authority."

Having reviewed the No-Fault Law's "language, legislative intent, application, and arbitrable claims with [Plaintiffs'] claims for common law fraud, RICO and unjust enrichment," this Court finds "nothing preventing an arbitrator from hearing them." *Elkholy*, 2022 WL 2373917, at *7. Therefore, Defendants' motion is granted as to Plaintiffs' claims for common law fraud, RICO and unjust enrichment, and these claims are dismissed in favor of arbitration.[2]

### 2. New Jersey IFPA Claim

As to the arbitrability of Plaintiffs' IFPA claim, Defendants again assert that either the No-Fault Law or the Plaintiffs' DPRP mandates arbitration. (ECF No. 16-1 at 17, 27.) This Court considers each argument in turn.

---

[2] As a result, this Court need not address Defendants' argument that Plaintiffs' DPRP contains an express arbitration agreement. (ECF No. 16-1 at 27.)

### a. The IFPA's Judicial Review Provision

Like the No-Fault law, the IFPA must "be construed liberally to accomplish the Legislature's broad remedial goals" of fighting insurance fraud. *Elkholy*, 2022 WL 2373917, at *9 (quoting *Stelton Radiology Corp.*, 2022 WL 1486116, at *8). While the IFPA provides that "[a]ny insurance company" damaged under the act "may sue in *any court* of competent jurisdiction," N.J. Stat. Ann. § 17:33A-7a (emphasis added), "[t]he statute is silent as to how the IFPA interacts with the No-Fault Law's PIP Benefits procedure," *Elkholy*, 2022 WL 2373917, at *9. Thus, "on one hand the No-Fault Law requires arbitration and, on the other hand, the IFPA unambiguously allows an insurance company to bring claims in any court with jurisdiction." *Id.* The Court must attempt to "harmonize the provisions of these two statutes," *Elkholy*, 2022 WL 2373917, at *9 (citing *In re Gray-Sadler*, 753 A.2d 1101, 1111 (N.J. 2000)), while keeping in mind that there is an "assumption that the Legislature was aware of its actions and intended for cognate provisions to work together," *Elkholy*, 2022 WL 2373917, at *9 (quoting *State ex rel. J.S.*, 998 A.2d 409, 418 (N.J. 2010)).

The plain meaning of the IFPA requires insurers' claims for damages under the IFPA be judicially resolved. N.J. Stat. Ann. § 17:33A-7(a); *see also Elkholy*, 2022 WL 2373917, at *9. Although the statute states that insurers "may sue in any court of competent jurisdiction," arbitration does not constitute a court of competent jurisdiction. *Elkholy*, 2022 WL 2373917, at *9 (quoting N.J. Stat. Ann. § 17:33A-7(a)). *Id.* "As a result, insurers' IFPA claims are to be filed in the judicial system and not before an arbitrator." *Elkholy*, 2022 WL 2373917, at *9 (citing *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1232 (N.J. 2015); *see also Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 2023 WL 2063115, at *7 (D.N.J. Feb. 17, 2023) (concluding that "courts in this District and the State of New Jersey repeatedly find that the Legislature did not

contemplate that a claim of a violation of the Insurance Fraud Prevention Act would be heard by an arbitrator"); *Fed. Ins. Co. v. von Windherburg-Cordeiro*, 2012 WL 6761877, at *4 (D.N.J. Dec. 31, 2012) (explaining that based on a review of the structure and history of the IFPA statute, plaintiff's IFPA claim was not arbitrable, even when a contractual arbitration clause is present that would otherwise encompass the claim); *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 928 A.2d 154, 159 (N.J. Super. Ct. App. Div. 2007) ("It is clear from this provision that the Legislature did not contemplate that a claim of a violation of the [IFPA] would be heard by an arbitrator."); *see generally Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018) ("The NJIFPA is not preempted by PIP arbitration rules.").

To the extent the IFPA may seem to contradict the No-Fault Law, state legislatures are presumed aware of prior enactments, including the pre-existing No-Fault Law. *Elkholy*, 2022 WL 2373917, at *10 (citing *State ex rel. J.S.*, 998 A.2d at 418). The state legislature "could have provided a carve out for PIP Benefits disputes [in the IFPA] but did not." *Id.* (citing *DiProspero*, 874 A.2d at 1048.) *See generally*, *id.* (discussing additional reasons why IFPA claims must be judicially resolved).

This Court has jurisdiction over Plaintiffs' IFPA claim, as supported by the plain language, purpose, and relevant provisions of the IFPA.

### b. GEICO's New Jersey DPRP

Having disposed of Defendants' first argument, this Court turns to Defendants' second theory, that GEICO's New Jersey DPRP contractually mandates arbitration of Plaintiffs' IFPA claim. (ECF No. 16-1 at 27.) However, "there exists strong legislative intent to categorically require judicial resolution of all the IFPA claims"; indeed, "courts routinely uphold the IFPA's absolute mandate for judicial resolution notwithstanding contractual clauses that would otherwise

require arbitration of IFPA claims." *Elkholy*, 2022 WL 2373917, at *10 (citing *Fiouris*, 928 A.2d at 157 ("[T]he Legislature did not contemplate that a claim of a violation of the [IFPA] would be heard by an arbitrator."); *von Windherburg-Cordeiro*, 2012 WL 6761877, at *4 ("[S]tate law requires [plaintiff]'s IFPA claim be brought in a judicial forum.")). This is true even when evaluating the IFPA with the FAA; courts have found in favor of judicial resolution. *Elkholy*, 2022 WL 2373917, at *11 (collecting cases, noting that state insurance regulations may "reverse preempt" conflicting federal statutes under the McCarran-Ferguson Act, and finding the insurance-specific IFPA to be controlling and therefore mandating judicial resolution). Therefore, on the basis that GEICO's New Jersey DPRP contractually mandates arbitration of Plaintiffs' IFPA claim, Defendants' Motion to Compel Arbitration is denied. This Court maintains jurisdiction over Plaintiffs' IFPA claim.

### C. Declaratory Judgment is Duplicative

Lastly, Plaintiffs request of this Court a declaratory judgment against Defendants to the effect that "during the relevant period, [Defendants were] not in compliance with all significant laws and regulations governing healthcare practice." (*See* ECF Nos. 17 at 5, 12 at ¶¶ 265–268.) "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "Courts may exercise that discretion and dismiss declaratory judgment claims where 'claims under the Declaratory Judgment Act . . . are duplicative or redundant of other claims.'" *Elkholy*, 2022 WL 2373917, at *12 (quoting *Morinville v. United States Pat. & Trademark Off.*, 442 F. Supp. 3d 286, 296 (D.D.C. 2020)). Because the Court finds it has jurisdiction over the merits of the IFPA claim, and to avoid duplicative findings, the Court, in its discretion, declines to separately entertain the IFPA claim

under the Declaratory Judgment Act. *See Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015); *In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 639–40 (E.D. Pa. 2017); *AV Design Servs., LLC v. Durant*, 2021 WL 1186842, at *12 (D.N.J. Mar. 30, 2021) (dismissing declaratory judgment claim where claim was "entirely duplicative of . . . breach of contract claim"). As in *Elkholy,* to the extent Plaintiffs seek a declaration that Defendants violated RICO, committed common law fraud, or are liable for unjust enrichment, an arbitrator shall decide that issue. *See Elkholy*, 2022 WL 2373917, at *12.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss and Motion to Compel Arbitration (ECF No. 16), is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** as to Plaintiffs' common law fraud, RICO, and unjust enrichment claims in favor of arbitration, and **DENIED** as to Plaintiffs' IFPA claim. Plaintiffs' request to replead its Amended Complaint (ECF No. 17 at 27) is **DENIED**. This Court finds it futile under Rule 15 given a lack of jurisdiction over Defendants' common law fraud, RICO, and unjust enrichment claims, and the sufficiency of Plaintiffs' IFPA claim. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend should be granted unless such amendment would be inequitable or futile). An appropriate order follows.

Date: May 31, 2023

*/s/Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**